## 50574. TAYLOR v. THE STATE.

PANNELL, Presiding Judge.

1. "The fact that the informant is a witness is not controlling where such evidence is not necessary to obtain a conviction. United States Ex Rel. Abbot v. Twomey, 460 F2d 400, 402 (2). In Roviaro v. United States, 353 U. S. 53, 62 (77 SC 623, 11 LE2d 639), it is stated: 'We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' " *Estevez v. State,* 130 Ga. App. 215, 216 (2) (202 SE2d 686). See also, *Welch v. State,* 130 Ga. App. 18, 19 (3) (202 SE2d 223).

2. Where a person merely takes an undercover police officer to a location and identifies, or introduces the officer to the defendant, and the officer arranges for and buys contraband from the defendant, and the person witnesses such sale, or alleged sale, such person is an informer and not a "decoy" and a disclosure of his name, address, etc., to the defendant is not required as a matter of law under Code § 38-1102, but rests in the discretion of the trial

judge, balancing the rights of the defendant and the rights of the state under all the facts and circumstances. *Welch v. State,* 130 Ga. App. 18, 19 (3), supra; *Estevez v. State,* 130 Ga. App. 215, 216 (2), supra; United States v. Davis, 487 F2d 1249; United States v. Clark, 482 F2d 103, citing on p. 104, United States v. Herrera, (5 Cir., 1972), 455 F2d 157, 158; United States v. Mendoza, (5 Cir., 1970), 433 F2d 891 894; United States v. Tsoi Kwan Sang, (5 Cir., 1969), 416 F2d 306, 309; United States v. Acosta, (5 Cir., 1969), 411 F2d 627, 630; Miller v. United States, (5 Cir., 1960), 273 F2d 279, 281.

3. However, where such person either prior to or at the time thereof makes the arrangements with the defendant for the sale of the contraband by the defendant to the police officer he becomes a participant whose identity may, *under proper circumstances,* be required to be disclosed to defendant as material to his defense; and particularly so where the arrangements for sale are made by such person over the telephone with the defendant in a manner and circumstances unknown to anyone other than such person and the defendant, *and* the defendant pleads entrapment as a defense. See United States v. Soles, 482 F2d 105; United states v. Russ, 362 F2d 843; Lopez-Hernandez v. United States, 394 F2d 820.

4. Where, under the circumstances disclosed in Division 3 above, a motion for disclosure is made by the defendant prior to trial and the defendant's *only asserted defense at the hearing on the motion is that he was not the person making the alleged sale,* in effect a defense of mistaken identity, we cannot say the trial court abused its discretion in overruling the defendant's motion for disclosure. Compare Lopez-Hernandez v. United States, 394 F2d 820, supra.

*Judgment affirmed. Deen, P. J., Quillian, Clark, Stolz, Webb and Marshall, JJ., concur. Bell, C. J., and Evans, J., concur in the judgment only.*

Submitted May 7, 1975 — Decided October 6, 1975.

*John E. Wiggins, Clifton M. Patty, Jr.,* for appellant.
*Earl B. Self, District Attorney, Jon B. Wood,*

*Assistant District Attorney, Ross Hatcher, III*, for appellee.

Only Division 1 requires elaboration.

The defendant was charged in a four-count indictment with violation of the Georgia Drug Abuse Control Act and the Georgia Uniform Narcotics Drug Act, involving the possession, sale and distribution of marijuana and cocaine. Upon arraignment, the defendant pled not guilty and filed his motion for disclosure of the identity of an informant or decoy, the motion alleging his name and identity were unknown and that he participated in the purchase of the marijuana and cocaine by a G. B. I. Agent and that the defendant needed the name, address and other identity so he could have the unknown as a witness "to establish affirmative defenses." On the hearing, defendant's attorney stated the defendant took the position that no such transaction as charged took place, that defendant never "sold drugs to anybody" and had no defense "other than that," as he did not remember where he was on the day the crime was charged to have been committed, and could not establish an alibi. And when the court inquired if defendant claimed entrapment, the following colloquy occurred: Defendant's attorney: "Well, your honor, we don't have sufficient facts to do so." The Court: "You can't claim entrapment unless you admit he sold it, and also that he only sold it because he was entrapped, that's the only way." Defendant's attorney: "We are not admitting that he made the sale, but at the same time, we would like to be able to discuss with these two [sic] other witnesses some facts in the case, and in the event they testify to that, we might have the affirmative defense of entrapment. Now, we have no defense whatsoever, we are left at the mercy of these agents, except that we deny that the transaction took place."

The only evidence offered at the hearing was the testimony of a Georgia Bureau of Investigation undercover agent. He testified that on the day in question he received information from the G. B. I. Headquarters that a Detective Black of the Catoosa County Sheriff's Department had two informers that would "work drugs" for the officers, at which time the witness made an

appointment to meet them at a definite location that night. The witness, with another special G. B. I. Agent, met with Detective Black and took the two informants into their vehicle and started driving around looking for different suspects for purchasing drugs in that county. They proceeded to one location at which time the other special agent and one of the informants were let out of the car. The informer remaining in the car with the witness went to a telephone and told witness he was going to call John Taylor and see if he could "set up" some cocaine for the witness. The witness did not hear the telephone conversation, but the informant came back to the automobile and they left and went up to what was called Happy Top, and on the way to the location the informant advised the witness that he had set up a buy for some cocaine but he didn't know how much, as well as some marijuana. They went up to the location on Happy Top and entered what appeared to be a combination living room and dining room. The informant introduced the witness "to John Taylor, a black male, approximately 6 feet, 4 inches, weighing 200 pounds." The three talked a little and the informant told Taylor that the witness was the one who wanted to buy the cocaine and marijuana. Taylor left the living room section where there were several other young people, both male and female, black and white, having a party or something, and then Taylor returned with a bag and gave the bag to the witness. The informant "was standing right there." The witness examined the bag and inside the bag was the marijuana and cocaine. The witness then discussed price with the defendant and while this discussion was going on, the informer "was standing there." The witness took the money and placed it on a coffee table and the defendant bent over and picked it up. The witness did not know whether anyone saw him put the money on the coffee table or not, or whether the informant saw him put the money down or saw what was in the bag at the time, although he was present in the room. After making the purchase the witness and the informant left. On cross examination the witness again reiterated his statement that he could not say whether the informant saw the transaction take place, although he was in the room. He also testified that

the other people in the room could have seen the transaction as well as the informant, but he was unable to state whether anyone was looking at the time of the transaction.

We are not here concerned with clear cases where the informer has no connection with the occurrence constituting the crime charged (*Hodges v. State,* 98 Ga. App. 97, 105 (7) (104 SE2d 704); *Anderson v. State,* 72 Ga. App. 487 (4) (34 SE2d 110)) or as to exigent circumstances surrounding a search and seizure (*Scull v. State,* 122 Ga. App. 696 (178 SE2d 720)), but with those cases where the informer is at least a witness or present, or more, as to the occurrence charged as a crime.

The older and more recent decisions of this court are in hopeless conflict. It is our opinion the older cases should be overruled. The more recent cases are those cited in Headnote 1, above. The older cases are *Crosby v. State,* 90 Ga. App. 63 (82 SE2d 38); *Roddenberry v. State,* 90 Ga. App. 66 (82 SE2d 40), and *Smallwood v. State,* 95 Ga. App. 766 (1) (98 SE2d 602). In *Butler v. State,* 127 Ga. App. 539, 540 (2) (194 SE2d 261) these cases were distinguished in the following language: "Thus in the cited cases, and the cases upon which they rely, the 'decoy' took an active part in the offense by acting as the purchaser in an illegal sale of liquor, opium, or counterfeit currency, for which transactions the seller was prosecuted, rendering the 'decoy' a material witness to the offense charged." That distinction was again made (following *Butler v. State*) in *Welch v. State,* 130 Ga. App. 18, 19 (3), supra. If these earlier cases are not so distinguishable then there is a conflict between these earlier decisions and *Butler v. State,* 127 Ga. App. 539, supra, *Welch v. State,* 130 Ga. App. 18, supra, and *Estevez v. State,* 130 Ga. App. 215, supra, and we are faced with either following the absolute rule of the older cases or overruling them. We have examined these older cases, both the opinions as written and the records in the cases, and find that no such distinction exists in two of the cases, and in all probability in the third.

The headnote in *Crosby v. State,* 90 Ga. App. 63, supra, reads as follows: "While as a general rule, applicable in this State, a law-enforcement officer will

not, when under cross-examination as a witness for the State upon the trial of a criminal case, be required to divulge the identity of a mere informer, the defendant is, nevertheless, for the reasons set forth in the body of this opinion entitled by cross-examination of such witness to determine the identity of a decoy who, at the instance of the officer, secures the actual facts upon which the prosecution is based." This statement in the headnote is very misleading. The facts are somewhat clarified in the opinion where the following appears: "The defendant was convicted upon the testimony of an agent of the State Department of Revenue, who testified that he was sent to communicate with the Sheriff of Appling County; that the sheriff instructed him to go with a man pointed out to him, but whose identity he never learned, to buy whisky from the defendant, and that he did so, and the defendant sold him non-tax-paid whisky. The sheriff corroborated this testimony by a statement that he had requested an agent of the revenue department, and sent him out with another person, whose name he knew but refused to divulge unless ordered to do so by the court. This unknown person was, according to the agent's testimony, present and aided in the transaction of purchasing the liquor. According to the sheriff's testimony, he was sent with the witness for that purpose. The defendant, who, in his unsworn statement, contended that no such transaction had ever taken place, assigns error on the refusal of the court to require the sheriff to divulge the name of the person who allegedly accompanied the revenue department agent to his home and assisted in purchasing the whisky."

In deciding the *Crosby* case, this court followed federal cases where the so-called informer himself actually *made the purchase of the contraband.* An examination of the record in the *Crosby* case discloses that the undercover police officer accompanied the informer to the place where the officer could buy the nontax-paid whisky, but the informer took no part in the purchase thereof. The whole opinion in the case of *Roddenberry v. State,* 90 Ga. App. 66, supra, reads as follows: "The assignment of error in the sole special ground of the motion for new trial, that the defendant's right of cross-examination was abridged by the trial court's

refusal to require the sheriff of the county to divulge the name of the 'decoy' who accompanied the revenue officer to the defendant's home and was supposedly present at the time the defendant sold the whisky to the revenue agent, is determinative of this case; and upon this point this case is controlled by the decision in *Crosby v. State,* ante." The statement of facts contained therein shows that the informer did not purchase the whisky. An examination of the record in that case makes the same disclosure. The informant merely told the undercover officer where to go and went with him.

The material part of the opinion in *Smallwood v. State,* 95 Ga. App. 766, supra, reads as follows: "The assignments of error in the first three amended grounds of the motions for new trial complain that the defendant's right to a thorough and sifting cross-examination was abridged by the trial court's refusal to require the State Revenue Agent to divulge the name of the 'decoy' who accompanied him to the defendant's home for the purpose of purchasing liquor. That this is reversible error has been settled in *Crosby v. State,* 90 Ga. App. 63 (82 SE2d 38), and *Roddenberry v. State,* 90 Ga. App. 66 (82 SE2d 40)." An examination of the record in that case discloses that the trial judge could have found the informer did not purchase the whisky but acted merely as a guide and accompanied the undercover agent to the premises, or could, on the contrary, have found the informant assisted in the purchase; however, in a colloquy with counsel in arguing this very question, the trial judge expressed his opinion that the police officer testified he alone made the purchase of the whisky. We assume his ruling was based thereon. We conclude, therefore, that *Crosby v. State,* 90 Ga. App. 63, supra, *Roddenberry v. State,* 90 Ga. App 66, supra, and *Smallwood v. State,* 95 Ga. App. 756, supra, are not distinguishable for the reasons given in *Butler v. State,* 127 Ga. App. 539, supra, and *Welch v. State,* 130 Ga. App. 18, supra, and being older decisions should be followed unless overruled. It is our opinion, however, that the more recent cases set forth the better rule and that not only should *Crosby* and *Roddenberry* be overruled but *Smallwood* as well, as all of them purport to postulate an *absolute rule* applicable to such situations.

The absolute rule concept in these three cases and in some cases in the federal courts underwent a change with the promulgation of the rule quoted from Roviaro v. United States, 353 U. S. 53, 61 by this court in *Estevez v. State,* 130 Ga. App. 215, 216 (2), supra, appearing in Headnote 1 of this opinion and took a turn of development more liberal to the state. This is illustrated by the following quotation from Soles v. United States, 482 F2d 105, 108: "Appellant's other claim is that the trial court should have compelled the Government to disclose the identity and whereabouts of the informant, who, it is alleged might have supported a claim of mistaken identity. The guiding principles are stated in Roviaro v. United States, 353 U. S. 53, 61-62, 77 SC 623, 1 LE2d 639 (1957). Soles relies on the words we have italicized in the following sentence from the opinion: Where the disclosure of an informer's identity, or of the contents of his communication, *is relevant and helpful to the defense of an accused,* or is essential to a fair determination of a cause, the privilege must give way. Both reason and context demonstrate, however, that these words are not to be read with extreme literalness. Determining whether the testimony of an informer is likely to be 'relevant and helpful' is a task best left to the trial court's informed discretion. On the next page of the Roviaro opinion, the Court made it clear that the principle of disclosure is far from absolute, 353 U. S. at 62, 77 SC at 628: . . . "

The court, in Soles, then quoted from Roviaro v. United States, supra, the identical quotation therefrom as appears in Headnote 1 of this opinion. See also, United States v. Simonetti, 326 F2d 614, 616; United States v. Fredia, 319 F2d 853, 854. This more liberal rule was also again approved in *Welch v. State,* 130 Ga. App. 18, 19 (3), supra.

We, therefore, conclude that the more liberal rule permitting the court to exercise its discretion under all the facts and circumstances is better than an absolute rule which requires the disclosure of the informer's name once he steps outside of the role of a strict informer by participating in some manner in the sale and purchase of the contraband, even if it be only as a witness. We, hereby, overrule *Crosby v. State,* 90 Ga. App. 63, supra,

*Roddenberry v. State,* 90 Ga. App. 66, supra, and *Smallwood v. State,* 95 Ga. App. 766, supra, insofar as they purport to establish an *absolute rule* requiring the court, under the facts in those cases, to grant to the defendant the right to the name and identity of the informer *as a matter of law.*